WILLIAM H. PATTON *et al.*

*v.*

THE PEOPLE *ex rel.* John B. Sweet.

*Opinion filed October 23, 1907.*

1. STATUTES—*title may be considered in determining intent of legislature.* If the title of an act purports to re-enact a former statute the intent of the legislature to re-enact said statute is established, even though the body of the act does not re-enact it.

2. SAME—*effect where statute is amended by mistake, amendatory act repealed and a new amendment passed.* Where a section of a statute is amended by mistake and the amendatory act is thereafter repealed, such section may be amended by a subsequent act.

3. DRAINAGE—*act of May 11, 1901, amending section 76 of the Farm Drainage act, is valid.* The act of May 11, 1901, (Laws of 1901, p. 157,) amending section 76 of the Farm Drainage act, is a valid enactment ánd in full force, notwithstanding the previous amendment of such section in 1897 and the repeal of the amendatory act on May 10, 1901. (Laws of 1901, p. 162.)

4. SAME—*section 15a of the Farm Drainage act is not in force.* The act of June 10, 1897, which purported to amend section 89*a* of the Farm Drainage act, was clearly an attempt to amend section 15*a* of such act, and the subsequent repeal of said section 89*a* by the act of May 10, 1901, must be regarded as a repeal of section 15*a*.

APPEAL from the Circuit Court of Sangamon county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

An information in the nature of a *quo warranto* was filed, on leave of court, by the State's attorney of Sangamon county on behalf of the People, upon the relation of John B. Sweet, at the May term, 1906, of the Sangamon county circuit court, requiring appellants to show by what authority they acted as drainage commissioners of Drainage District No. 1 of the town of Divernon, in said county. The information set up that appellants were the commissioners of highways of said town, and on December 10, 1904, made

and entered of record in the clerk's office an order creating
a drainage district within the boundaries of said town, which
they designated as Drainage District No. 1; that said order
was based solely upon authority supposed to be given by
section 76 of the "act to provide for drainage for agricul-
tural and sanitary purposes and to repeal certain acts there-
in named," approved June 27, 1885; (Session Laws of
1885, p. 106;) that on or before the filing of the petition
for said district said section 76 of said act was repealed by
the amendatory act of June 10, 1897. (Bradwell's Session
Laws of 1897, p. 157.) It is further contended by counsel
that said amendatory act last named was itself expressly re-
pealed by the act of May 10, 1901, (Session Laws of 1901,
p. 162,) and that the act of May 11, 1901, (Session Laws
of 1901, p. 157,) was inoperative, ineffectual and unconsti-
tutional because. (a) its title purported to amend section 76
of an act approved June 26, 1885, while its first section
amended section 76 of an act approved June 27, 1885; (b)
it purported to amend a section of the statute which had
already been repealed, in effect, by the above act of June 10,
1897, and had been expressly repealed by said act of May
10, 1901. The information further alleged that even if said
act had not been repealed, as aforesaid, still said appellants
had been superseded in their office by Charles Browning,
David T. Haire and Henry C. Barnes, who were duly elected
drainage commissioners for said district on the second Sat-
urday of March, 1906.

Appellants filed a demurrer to this petition, setting up,
among other things, that said section 76 of said act of 1885,
as amended by said act of May 11, 1901, was in full force
and effect at the time of the organization of said district;
that there was no law in force under which an election for
drainage commissioners of said Drainage District No. 1
could be held on said second Saturday of March, 1906.

On a hearing before the court the demurrer to the in-
formation was overruled, and appellants excepted to the

ruling and elected to stand by the demurrer. The court thereupon held that appellants had usurped and unlawfully held and assumed office as such drainage commissioners, and ordered and adjudged that they be ousted therefrom and be absolutely excluded from exercising, using or administering the said office. Appellants excepted to the order and judgment and prayed an appeal to this court.

JAMES M. TAYLOR, and LESLIE J. TAYLOR, for appellant.

CONNOLLY & BARNES, and FRANK L. HATCH, State's Attorney, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The main contention of appellee is, that the act of May 11, 1901, (Session Laws of 1901, p. 157,) was not a valid enactment because it attempted to amend section 76 of said Farm Drainage act, and at that time there was no section 76 of said act. The first amendment to the Farm Drainage act of 1885 bearing on the question now under discussion was passed by the legislature in 1895, adding sections 15a (which provided for the election of drainage commissioners and prescribed their oath) and 15b, (providing for the appointment of a treasurer by the drainage commissioners.) (Bradwell's Session Laws of 1895, p. 120.) The next amendment was made June 10, 1897, and purported to amend sections 76 and 89a of said Farm Drainage act as amended by the last amendment of 1895. (Bradwell's Session Laws of 1897, p. 157.) It is apparent from the reading of this amendment in connection with the act it purported to amend, that a mistake was made as to the number of the sections amended. Section 76 as it stood in the act at this time covered the subject of districts by user. The purported amendment of said section 76 referred in no way to districts by user, but to the appointment of a clerk by the drainage commissioners. Paragraph 76 of Hurd's Stat-

utes of 1895 (p. 626) is section 2 of the Farm Drainage act, and refers to the clerk of the drainage commissioners, as does this last amendment of section 76, passed June 10, 1897. In said Farm Drainage act there was no such section as 89a, although Hurd's Statutes of 1895 (p. 629) headed section 15a of the amendment of 1895 as paragraph 89a. The drafter of this amendment clearly made a mistake in referring to the sections amended, evidently having before him Hurd's Statutes of 1895 and referring to the paragraph numbers given to the section by the annotator instead of to the sections of the law itself. That the legislature understood this to be the fact is shown by the act of May 10, 1901, (Session Laws of 1901, p. 162,) wherein the mistake is set out and said amendent of June 10, 1897, is repealed, and by the title of which said amendment it was proposed "to re-enact said section 76 and to legalize proceedings had and drainage districts organized under said section 76." In the body of the act, however, nothing is said about re-enacting section 76.

Assuming that section 76 was not re-enacted by this amendment of May 10, 1901, (Session Laws of 1901, p. 162,) then does it follow that the act of May 11, 1901, (Session Laws of 1901, p. 157,) which attempted to amend said section 76, is invalid because there was no section 76 of said act in existence? There is some conflict of authority on this question. The precise point here under discussion, so far as we are aware, has never been before this court for decision. A kindred question, as to the effect of a second amendment of an act which ignores a prior amendment, has been considered by this court in *Louisville and Nashville Railroad Co.* v. *City of East St. Louis,* 134 Ill. 656, and *Village of Melrose Park* v. *Dunnebecke,* 210 id. 422, and other cases referred to in these two decisions. In the latter case just cited there was an attempt to distinguish it from the earlier case of *Louisville and Nashville Railroad Co.* v. *City of East St. Louis, supra.* Whatever conflict

there may be in these two cases, we are of the opinion that the reasoning of the *Melrose Park case, supra,* is more nearly in harmony with the weight of authority than is the earlier decision referred to, and supports appellants' position. The United States Court of Appeals, in *City of Beatrice* v. *Masslich,* 108 Fed. Rep. 743, stated: "The decided weight of authority and the better opinion is, that an amendatory act is not invalid, though it purport to amend a statute which had previously been amended or for any reason been held invalid." In Lewis' Sutherland on Statutory Construction (2d ed. vol. 1, sec. 233,) the author states that this view of the United States Circuit Court of Appeals "is sustained by the decisions." In *Jones* v. *Commissioner,* 21 Mich. 236, Judge Cooley, answering in the opinion the argument that an amendatory act referring to a repealed or non-existing act must be invalid, said: "This reasoning seems to us too refined for practical value. Under our constitution the mode of amending a section of the statute is by enacting that the section in question 'shall read as follows.' The position of the section in the original statute is not changed, and there is no reason why an amendment of a subsequent section should not be made by reference to its original number in the statutes." The rule for the guidance of courts is to ascertain the intention of the legislature, and not their mistakes, either as to law or fact. (1 Lewis' Sutherland on Statutory Construction,—2d ed.—sec. 233; *Commonwealth* v. *Kenneson,* 143 Mass. 418.) The only question is, has the legislature expressed its purpose intelligibly and provided fully upon the subject? If it has, then the act is valid and must be upheld. (*People* v. *Canvassers,* 143 N. Y. 84; see, also, to the same effect, *People* v. *Onahan,* 170 Ill. 449.) While said act of May 10, 1901, (Session Laws of 1901, p. 162,) did not provide in the body of the act for the re-enactment of said section 76, the intent of the legislature to re-enact that section is plainly shown by the title. We said in *Baird* v. *Hutchinson,* 179 Ill. 435,

that the meaning of the legislature must be gathered from all they have said, as well from that which is ineffective as from that which is authorized by law; and it was there held that the unconstitutional part of the law might be considered in order to ascertain the intent of the legislature in another part of the same law. 2 Lewis' Sutherland on Statutory Construction, (2d ed.) sec. 452.

It might well be urged that the act of June 10, 1897, (Bradwell's Session Laws of 1897, p. 157,) the subject matter of the purported amendment not being germane to the subject matter of said original section 76 and being plainly a mistake, as is heretofore shown, did not, in fact, amend said section 76 of said Farm Drainage act of June 10, 1897. (1 Lewis' Sutherland on Statutory Construction,—2d ed.—sec. 241; 2 id. sec. 410, and cases cited; *Otis* v. *People*, 196 Ill. 542; *School Directors* v. *School Directors*, 73 id. 249.) But, regardless of the question as to whether said section 76 was amended by said act of June 10, 1897, we are of the opinion that the intent of the legislature by said act of May 10, 1901, (Session Laws of 1901, p. 162,) and said act of May 11, 1901, (Session Laws of 1901, p. 157,) is clear and unmistakable; that under the authorities heretofore cited said act of May 11, 1901, was valid and in full force and effect at the time said order of December 10, 1904, was made and entered for the creation of said Drainage District No. 1 of the said town of Divernon. *Village of Melrose Park* v. *Dunnebecke, supra.*

The title of said act of May 11, 1901, refers to the original Farm Drainage act as having been approved June 26, 1885, when, in fact, it was approved June 27, 1885. The enacting clause of the amendatory act of 1901 gives the correct date and shows clearly what act was amended. *Barnes* v. *Drainage Comrs.* 221 Ill. 627.

The question as to whether appellants have been superseded as drainage commissioners for said district by the election of others has not been discussed in appellee's brief,

but we assume that the argument in support of that contention is that section 15*a* of said amendment of June 21, 1895, is still in force. Said amendment of June 10, 1897, although it attempted to amend section 89*a* when there was no such section in the original act, was clearly an attempt to amend section 15*a* of the act as amended June 21, 1895. This being the clear intention of the legislature, under the authorities we have heretofore cited section 89*a* of said amendment of June 10, 1897, must be construed as an amendment of said section 15*a*. (*Illinois Central Railroad Co.* v. *People,* 143 Ill. 434.) Section 89*a* was repealed by said act of May 10, 1901, and it necessarily follows that section 15*a* is not in existence, and there was no authority for the election of said Browning, Haire and Barnes on said second Saturday of March, 1906. Moreover, it is clear that said act of May 11, 1901, provided specifically for the highway commissioners acting as drainage commissioners, and that the provisions of said section 15*a* as to said drainage commissioners would be so repugnant to said act of May 11, 1901, that both could not be in force. Therefore, under the authorities, said last named act would be understood as repealing said section 15*a* even if it had not theretofore been repealed. *English* v. *City of Danville,* 150 Ill. 92; *Board of Water Comrs.* v. *People,* 137 id. 660.

The legality of the organization of this district was raised in this court by writ of *certiorari* in the case of *Barnes* v. *Drainage Comrs. supra,* and while the decision in that case may not be *res judicata* of the questions here involved, as contended for by appellants, it is quite evident that the points we have heretofore discussed were raised and considered in that case, and the decision, so far as it has any bearing, tends strongly to uphold the conclusion heretofore reached herein. The last sentence of the opinion in *Barnes* v. *Drainage Comrs. supra,* stated: "The record shows that the district was legally organized." See, also, *People* v. *McDonald,* 208 Ill. 638.

What we have already said renders unnecessary any discussion of the other questions raised in the briefs.

The judgment of the circuit court will be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*